**ORIGINAL**

# In the United States Court of Federal Claims

No. 09-869C

Filed: November 21, 2013

**FILED**

**NOV 21 2013**

**U.S. COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ************************************* | The Act of June 15, 1917 (authorizing war-time expropriation of property and payment of just compensation); |
| BENJAMIN GAL-OR, DR. VALERY SHERBAUM, and DR. MICHAEL LICHTSINDER, | U.S. Const. amend. V; *Pro Se*; 18 U.S.C. § 1839(3) (federal "trade secrets"); |
| Plaintiffs, | 28 U.S.C. § 1498(a) (jurisdiction re: patent infringement by the federal government); |
| v. | 28 U.S.C. § 2501 (statute of limitations); 28 U.S.C. § 2502(a) (the "Reciprocity Act"); |
| THE UNITED STATES, | RCFC 12(b)(1) (lack of subject matter jurisdiction); |
| Defendant. | RCFC 12(b)(6) (failure to state a claim). |
| ************************************* | |

**Benjamin Gal-Or**, Malabalay City, Mindanao Philippines, Plaintiff, *pro se*.
**Dr. Valery Sherbaum**, Kiriat Yam, Israel, Plaintiff, *pro se*.
**Dr. Michael Lichtsinder**, Haifa, Israel, Plaintiff, *pro se*.

**Scott Slater**, Trial Attorney, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**MEMORANDUM OPINION AND ORDER REGARDING THE GOVERNMENT'S THIRD MOTION TO DISMISS**

**BRADEN,** *Judge*.

This case concerns allegations made by an Israeli citizen that the United States ("the Government") infringed a United States Patent that he co-owned and misappropriated his trade secrets, without authorization.

To facilitate review of this Memorandum Opinion and Order, the court includes the following outline:

I.   **RELEVANT FACTS.**

II.  **PROCEDURAL HISTORY.**

III. **DISCUSSION.**

A.  Jurisdiction.

B.  Standard Of Review For Pro Se Litigants.

C.  Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(1).

D.  Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(6).

E.  Issues Raised By The Government's Third Motion To Dismiss.

   1. Whether 28 U.S.C. § 2502(a) Divests The Court Of Subject Matter Jurisdiction To Adjudicate Plaintiffs' Claims.

      a. The Government's Argument.

      b. The Plaintiffs' Response.

      c. The Court's Resolution.

   2. Whether The Disclosure Of Trade Secrets Extinguishes Attendant Property Rights.

      a. The Government's Argument.

      b. The Plaintiffs' Response.

      c. The Court's Resolution.

IV. CONCLUSION.

* * *

I.  RELEVANT FACTS.[1]

Plaintiff, Benjamin Gal-Or, is an Israeli citizen, scientist, and former professor of engineering at domestic and international universities. Amended Complaint ("Am. Compl.") ¶ 1.1. Dr. Valery Sherbaum and Dr. Michael Lichtsinder were co-owners of United States Patent 5,782,431 ("the '431 patent") with Mr. Gal-Or from July 21, 1998 to July 26, 2006, at which

---

[1] The relevant facts discussed herein were derived from a 41-page August 2, 2010 Amended Complaint, including 40 pages of appendices ("Pl. App. A–H") and 8 pages of "References & Notes;" Plaintiffs' September 18, 2012 Response to CFC-38 ("Pl. Resp."); Plaintiffs' January 14, 2013 Response to/Reconsideration-in-Part Motion of Order 46 ("Pl. Br."); and the April 17, 2013 Re-Assignment Motion, AND Deny CFC-38/50 Motion AND Brief Ordered by CFC-53 ("Pl. Supp. Br."). The court's factual discussion also is informed by *Gal-Or v. United States*, 97 Fed. Cl. 476 (2011) ("*Gal-Or I*").

2

time the '431 patent expired, because the maintenance fee was not paid. Am. Compl. ¶ 1.3; *see also* Pl. App. G at 66.

Mr. Gal-Or owns at least six different technologies, some are the subject of the '431 patent, while others are trade secrets. Am. Compl. at 7–8; Pl. Supp. Br. at 3–4. The inventions are: (1) "Stealth;" (2) "Pure Jet Control;" (3) "Enhanced Survivability and Supermaneuverability;" (4) "RanPas Supermaneuverability;" (5) "Cruise Missiles;" and (6) "Sea and Land Thrust Vectored Control." Am. Compl. at 5–8. Mr. Gal-Or owns "100% of [items] 1 to 3 . . . and 90% of [items] 4 and 5," sharing 10% ownership of items 4 and 5 with "his assistants Dr. Valery Sherbaum and Dr. Michael Lichtsinder." Am. Compl. ¶ 2.2. Only the "Enhanced Survivability and Supermaneuverability" and "Sea and Land TVC" inventions were subject to the '431 patent during 1998–2006. Am. Compl. at 7–8. Other inventions, including the trade secrets at issue in this case, are related to, or derived from, Israeli Patent Application 78402, filed in 1986. Am. Compl. ¶ 1.3; Pl. Br. at 12. Mr. Gal-Or describes these trade secrets as "visionary-futuristic military technology that has influenced the direction of fighter aircraft design." Pl. Br. at 4 (internal quotations omitted). Although the relationship between these trade secrets and the '431 patent is not entirely clear, Mr. Gal-Or insists that the "patent is on a different technology than [his] taken trade secrets." Pl. Supp. Br. at 3.

During the 1980's and 1990's, multiple disclosures of Mr. Gal-Or's technologies were made to the Government and other third parties. Am. Compl. at 15 ("Said disclosures involved documents, video tapes [and] reports conferred only in conference, office, or lecturing rooms, or at [Mr. Gal-Or's] laboratory or during [Mr. Gal-Or's] flight tests at *Megiddo* or *Ein Shemer* airfields.") (italics in original); *see also* Am. Compl. at 4, 16–25; Pl. App. B at 43. For example, after the Israeli Patent Application 78402 was filed on April 2, 1986, experts were invited to inspect Mr. Gal-Or's models and view tests of his flight inventions. Am. Compl. at 16. None of the visiting experts, however, signed a confidentiality agreement prior to attending Mr. Gal-Or's demonstrations. Am. Compl. at 16 ("[S]aid experts were unauthorized to sign any *proprietary information disclosure agreement.*" (emphasis in original)).

In 1986, Mr. Gal-Or was invited by the President of The Boeing Company ("Boeing") to visit the United States and discuss various aspects of Israeli Patent Application 78402. Am. Compl. at 17. On August 25, 1986, Mr. Gal-Or entered into a Proprietary Information Agreement authorizing Boeing to provide information about Mr. Gal-Or's Israeli Patent Application 78402 to the Government and other third parties. Am. Compl. at 17–18. Thereafter, Mr. Gal-Or provided Boeing with this information, labeled "classified," together with the names of the co-owners of Israeli Patent Application 78402. Am. Compl. at 18. Boeing then proceeded to infringe Israeli Patent Application 78402 in competing for Government contracts. Am. Compl. at 18. In turn, the Government used the inventions subject to the '431 patent and Israeli Patent Application 78402.

In 1986, Mr. Gal-Or also disclosed information about his inventions to Dr. Sam Williams of Williams International. Am. Compl. at 22. This disclosure, however, was made without a proprietary information disclosure agreement. Am. Compl. at 22 (stating that "Dr. Williams invited [Mr. Gal-Or] to disclose his [proprietary information] . . . but . . . refrained from signing any proprietary information disclosure agreement").

And, in August 1986, Mr. Gal-Or visited Pratt & Whitney and provided their senior engineers with information about various aspects of his inventions, including information related to engine nozzles for single or twin manned and unmanned air vehicles. Am. Compl. at 21. In August 1986, Mr. Gal-or also disclosed classified and unclassified aspects of his work to Eli Benstein of Teledyne Technologies Incorporated. Am. Compl. at 22–23.

In 1987, Mr. Gal-Or visited a propulsion laboratory operated by the United States Air Force ("Air Force") and met with a Dr. Richey to discuss Mr. Gal-Or's inventions. Am. Compl. at 18–19. Also present during this meeting were Messrs. J.A. Laughrey and D. Bowers. Am. Compl. at 19. Thereafter, Mr. Gal-Or received $300,000 from the Air Force for him to conduct test flights between 1987 and 1992. Am. Compl. at 19. The results of these tests were incorporated into aspects of the Air Force flight program, resulting in substantial savings. Am. Compl. at 20. But, as *Gal-Or I* observed, "[t]here was apparently no confidentiality agreement executed regarding the flight tests." *Gal-Or I*, 97 Fed. Cl. at 479 n.4.

Sometime in 1986 or 1987, Mr. Gal-Or again disclosed aspects of his proprietary information to General Dynamics Corporation ("General Dynamics") and Lockheed Martin Corporation ("Lockheed Martin"). Am. Compl. at 20. The information that Mr. Gal-Or disclosed to General Dynamics apparently was "classified," but allegedly made its way into various aspects of the Government's F-16 flight program. Am. Compl. at 20–21. When Mr. Gal-Or made a presentation to Lockheed Martin, he also disclosed aspects of his "know-how and trade secrets" that were "strategic" and "theoretical." Am. Compl. at 20–21. Thereafter, General Dynamics and Lockheed Martin paid Mr. Gal-Or to conduct flight tests until 1997. Am. Compl. at 21.

Between 1987 and 1992, Mr. Gal-Or also shared information about his inventions with twelve members of the Air Force in San Antonio, Texas. Am. Compl. at 23. Between August 1990 and December 1991, Mr. Gal-Or provided the Air Force with prototypes of his inventions. Am. Compl. at 23.

In 1991, Mr. Baumann, a Captain in the Air Force, worked in Mr. Gal-Or's laboratory[2] for three months, to assist him in conducting Air Force funded flight experiments. Pl. App. F. at 62. These Air Force funded experiments were different from the $300,000 "funding contract with USAF/DOD" that Mr. Gal-Or had secured in 1987. Pl. App. F at 63. During this time, Captain Baumann repeatedly transmitted confidential reports about Mr. Gal-Or's trade secrets to his supervisors, without Mr. Gal-Or's permission. Pl. App. F at 63. In addition, after returning to the United States, Captain Baumann gave a public lecture that discussed Mr. Gal-Or's trade secrets and other information obtained during Captain Baumann's work in Mr. Gal-Or's laboratory. Pl. App. F at 64. Nevertheless, Mr. Gal-Or indicates that he "politely [continued] to work with [Mr.] Bower[s] and [Captain] Baumann," allowing reports they published to contain his confidential information. Pl. App. F at 64.

---

[2] It is unclear whether Mr. Gal-Or's laboratory was in Israel or Germany. *Compare* Pl. App. F at 62 (describing Mr. Gal-Or's "TIIT Jet Laboratory in Israel"), *with* Pl. App. F at 63 (stating that the Department of Defense approved only a "3-month stay in Germany").

4

Between 1993 and 1995, Mr. Gal-Or conducted numerous "[d]issemination seminars" for the Federal Aviation Administration ("FAA"), at which he shared details of his proprietary information. Am. Compl. at 25. As a result of these seminars, Mr. Gal-Or received $50,000 from the FAA to fund additional test flights. Am. Compl. at 25.

Sometime in 1994 or 1995, Mr. Gal-Or accepted an invitation from the National Aeronautics and Space Administration ("NASA") to speak at a seminar with approximately fifty participants. Pl. App. H at 72. On this occasion, he also met with Mr. Burcham, a NASA employee, and individuals representing two of NASA's clients. During this meeting, Mr. Gal-Or was asked and agreed to disclose a report containing classified Israeli material.[3] Pl. App. H at 72.[4]

In 1994, Mr. Gal-Or also met with Col. Mike Francis, a Director of the Defense Advanced Research Project, during which Mr. Gal-Or's disclosed various aspects of his propriety information. Am. Compl. at 24.

In 2007, NASA released a Report publicly recognizing that the DHS "created the Propulsion–Controlled Aircraft Recovery project in 2005." Pl. App. H at 76. Mr. Gal-Or believes this project used the technology that he disclosed to Mr. Burcham in 1994 or 1995. Pl. App. H at 72–76.

Between 1986 and 1990, Mr. Gal-Or also disclosed information about "rectangular PJC nozzles" to General Electric. Am. Compl. at 24; Pl. App. H at 75. Thereafter, General Electric provided Mr. Gal-Or's information to the Government, who incorporated these nozzles into the production of the RQ–107. Pl. App. H at 75. On December 4, 2009, the Government first revealed the RQ–107. Pl. App. H at 76.[5]

## II.   PROCEDURAL HISTORY.

Mr. Gal-Or, proceeding *pro se*, filed a Complaint in the United States Court of Federal Claims on December 16, 2009, that was assigned to Senior Judge Eric G. Bruggink. On February 4, 2010, the Government filed a Motion To Dismiss. In response, on June 25, 2010, the court dismissed the December 16, 2009 Complaint and directed Mr. Gal-Or to file an

---

[3] In 2005, Mr. Gal-Or discovered that Mr. Burcham worked for the Department of Homeland Security ("DHS"). Pl. App. H at 73. And, Mr. Gal-Or subsequently learned that Mr. Burcham filed an application for a United States Patent, which issued as No. 6,126,111 ("the '111 patent"), that usurped portions of Mr. Gal-Or's inventions. Pl. App. H at 73–74.

[4] Between 1989 and 1992, Mr. Gal-Or also allegedly disclosed the technology subject to the '111 patent to the Air Force that subsequently was used in the F–15 prototype. Pl. App. H at 74.

[5] Mr. Gal-Or contends that this is the date on which his claim for patent infringement accrued. Pl. App. H at 77.

amended complaint "setting out his claims with more precision." *Gal-Or I*, 97 Fed. Cl. at 477–78.

The August 2, 2010 Amended Complaint alleges that the Government infringed the '431 patent and misappropriated twenty-five[6] of Plaintiff's trade secrets without authorization, violating the Taking Clause of the Fifth Amendment to the United States Constitution. Am. Compl. ¶ 1.2.[7]

\* \* \*

Specifically, the August 2, 2010 Amended Complaint catalogs at least fourteen different incidents in which Mr. Gal-Or allegedly disclosed aspects of his inventions to the Government and/or other entities. Am. Compl. at 4, 16–25; Pl. App. B at 43. These disclosures occurred between 1986 and 1997 and did not always take place under the auspices of a nondisclosure agreement. Am. Compl. at 4, 16–25; Pl. App. B at 43; Pl. Resp. at 17 ("[D]issemination . . . was conducted via unclassified, non-confidential, academic [and] industrial seminars/re-education of pilots [and] engineers, *sometimes delivered* under standard, 'Non Disclosure Agreements.'") (emphasis added). Because the Government subsequently utilized information obtained during these disclosures without paying Mr. Gal-Or, the Amended Complaint alleges that at least six of his inventions have been, or are currently being, used by the Government without authorization. Am. Compl. ¶¶ 1.2–1.5, 2.1. The Amended Complaint alleges that the Government has infringed the '431 patent under 28 U.S.C. § 1498(a), and misappropriated Mr. Gal-Or's trade secrets in violation of the Fifth Amendment to the United States Constitution. Am. Compl. ¶ 1.2. In addition, the Amended Complaint alleges that six of Mr. Gal-Or's technologies have been "diffused into an enormous number of classified Federal Government programs." Am Compl. ¶ 4.1. The Amended Complaint requests damages in the amount of $71,572,000.00. Am. Compl. at 1.

On September 16, 2010, the Government filed a second Motion To Dismiss, arguing that: the court did not have subject matter jurisdiction to adjudicate Mr. Gal-Or's patent takings claims; the remaining claims were untimely or inadequately pled; and that Mr. Gal-Or lacked standing to sue, because the co-owners of the '431 patent did not join this case as co-plaintiffs.

On February 28, 2011 the court issued a Memorandum Opinion and Order granting in part and denying in part the Government's Motion To Dismiss. *See Gal-Or I*, 97 Fed. Cl. at 483. Therein, the court ruled that: (1) it lacked subject matter jurisdiction to adjudicate Mr. Gal-Or's

---

[6] Mr. Gal-Or asserts ownership of fifty-seven trade secrets. Pl. Br. at 3; Pl. Resp. at 1, 2; *but see* Pl. Supp. Br. at 2 (describing Mr. Gal-Or's ownership of "hundreds" of trade secrets). Mr. Gal-Or, however, concedes that he can pursue claims alleging misappropriation of only twenty-five trade secrets, because the others are barred by 28 U.S.C. § 2501. Pl. Resp. at 4, 16; Pl. Br. at 12 ("[t]here are 25 timely takings out of 57 [trade secrets] taken") (emphasis removed); *but see* Pl. Resp. at 8 (stating that sixteen trade secrets "remain protected").

[7] In Plaintiffs' filings with the court, the '431 patent has been referred to as "Property A," and the trade secrets collectively have been referred to as "Property B." Pl. Resp. at 4–6.

takings claims; (2) all but two of the claims for patent infringement and trade secret misappropriation were barred by 28 U.S.C. § 2501; (3) an actionable claim was pled as to infringement of the '431 patent by the Government in 2005; but (4) Mr. Gal-Or currently lacked standing to sue on the patent infringement claim, because Drs. Sherbaum and Lichtsinder, as co-owners of the patent, were indispensable parties who had not joined the action. *See Gal-Or I*, 97 Fed. Cl. at 480–483.

On July 21, 2011, after multiple failed attempts to join Drs. Sherbaum and Lichtsinder, the court dismissed Mr. Gal-Or's claim for patent infringement for failure to join indispensable parties. *See Gal-Or v. United States*, No. 09-869C, 2011 WL 10550570 (Fed. Cl. July 21, 2011) ("*Gal-Or II*"). Mr. Gal-Or appealed. The United States Court of Appeals for the Federal Circuit held: (1) that the court erred because the Amended Complaint appeared to assert a misappropriation of trade secrets claim that was cognizable as a Fifth Amendment taking; and (2) the court erred in determining that all of the takings claims were untimely. *See Gal-Or v. United States*, 470 Fed. Appx. 879, 884 (Fed. Cir. 2011) ("*Gal-Or III*"). The United States Court of Appeals for the Federal Circuit vacated *Gal-Or II* and instructed the court, on remand, to determine: whether the remaining takings claims were timely; whether Drs. Sherbaum and Lichtsinder were necessary parties; and the effect of Mr. Gal-Or's unsuccessful attempts to join Drs. Sherbaum and Lichtsinder when considering the remaining claims.

On July 2, 2012, the court granted Mr. Gal-Or's motion for joinder and directed the Clerk to add Dr. Sherbaum and Dr. Lichtsinder as co-plaintiffs, the effect of which was to re-instate Mr. Gal-Or's 2005 patent infringement claim. The July 2, 2012 Order summarized the status of Mr. Gal-Or's patent infringement claims:

> In our previous opinion, we held that all but two of [Mr. Gal-Or's] claims were barred by the six-year statute of limitations provided by 28 U.S.C. § 2501 (2006). Although the Federal Circuit vacated that previous decision, it nevertheless held that we correctly determined that, except for [Mr. Gal-Or's] patent claim relating to production of drone aircraft in 2005, the patent claims were time-barred. The Federal Circuit also did not question our holding that any patent infringement claims accruing after 2006 failed to state a cause of action because the patent expired in 2006, thus extinguishing the very patent rights to be enforced. [Thus,] [w]e will treat the pre-2003 and post-2006 patent claims as barred.

July 2, 2012 Order at 2–3, *Gal-Or v. United States* (No. 09-869), Dkt. No. 37 (internal citations omitted).

The July 2, 2012 Order further clarified that Dr. Sherbaum and Dr. Lichtsinder were not joined as parties in this case with respect to the trade secret claims and also advised the parties that additional briefing on Mr. Gal-Or's trade secrets claims was necessary, because although "some patent claims expired in 2006, th[at] did not mean that the trade secrets claims associated with that patent also expired." *Id.* at 3.

On August 15, 2012, the Government filed a third Motion To Dismiss ("Gov't Mot."), arguing that Plaintiffs, as foreign citizens, failed to satisfy the "reciprocity" requirement under 28

7

U.S.C. § 2502(a) ("Reciprocity Act").[8] On September 18, 2012, Plaintiffs filed a Response. On September 26, 2012, the Government filed a Reply.

* * *

On October 2, 2012, this case was transferred to now Senior Judge Nancy B. Firestone, pursuant to RCFC 40.1(b). On October 17, 2012, the court did not rule on the Government's August 15, 2012 Motion to Dismiss, but issued an Order directing Mr. Gal-Or to submit evidence of "reciprocity," as required by 28 U.S.C. § 2502(a), and included: a copy of 28 U.S.C. § 2502(a); a statement specifying the type of evidence required to establish reciprocity; and copies of relevant court cases construing 28 U.S.C. § 2502(a). The October 17, 2012 Order also advised Mr. Gal-Or that the court would dismiss the Amended Complaint, pursuant to the Reciprocity Act, unless sufficient evidence of reciprocity was proffered by January 18, 2013.

On January 14, 2013, Plaintiffs submitted: a Memorandum, together with excerpts from various websites; a "U.S.-Israel Reciprocity Case;" a summary of bilateral treaties and memoranda of understanding between the United States and Israel; and a translated extract of Israeli law on foreign judgments. Pl. Br. at 15–31. On February 11, 2013, the Government filed a Response. On March 13, 2013, Plaintiffs filed a Reply.

On March 21, 2013, the court issued an Order ruling that Plaintiffs met their burden to establish reciprocity under 28 U.S.C. § 2502(a), because the Treaty of Friendship, Commerce, and Navigation between the United States and Israel provides for: "national treatment and most-favored-nation treatment with respect to access to the courts of justice and to administrative tribunals and agencies within the territories of the other Party." March 21, 2013 Order at 6, *Gal-Or v. United States* (No. 09-869), Dkt. No. 53 (quoting Treaty of Friendship, Commerce and Navigation, U.S-Israel, Aug. 23, 1951, 5 U.S.T. 550). The March 21, 2013 Order, therefore, denied the Government's August 15, 2012 Motion to Dismiss, in part. *Id.* (stating that the court "rejects the government's motion to dismiss all of the plaintiffs' claims based on the Reciprocity Act").

To resolve the remaining trade secrets takings claims, the March 21, 2013 Order directed Mr. Gal-Or to file supplemental briefing by April 15, 2013 that: (1) identified with specificity the 25 trade secrets that are the subject of the takings claims; (2) explained why Mr. Gal-Or had not disclosed those trade secrets, as the Government argued; and (3) discussed the relationship between the alleged trade secrets and the subject matter of the '431 patent.

* * *

---

[8] It appears that Dr. Sherbaum and Dr. Lichtsinder are citizens of a foreign government, and that the Government and Senior Judge Firestone assumed that these co-plaintiffs were Israeli. Gov't Mot. at 4; *see also* October 17, 2012 Order at 2, *Gal-Or v. United States* (No. 09-869), Dkt. No. 46.

On April 16, 2013, this case was reassigned to the undersigned judge, pursuant to RCFC 40.1(b). On April 17, 2013, Plaintiffs filed a Supplemental Brief. On April 29, 2013, the Government filed a Response. On July 8, 2013, Plaintiffs filed a Status Report.

### III. DISCUSSION.

#### A. Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act . . . ."); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400). And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

Because the Amended Complaint in this case alleges that the Government infringed the '431 patent, the United States Court of Federal Claims has jurisdiction to adjudicate that claim. *See* 28 U.S.C. § 1498(a); *see also Crater Corp. v. Lucent Techs., Inc.*, 255 F.3d 1361, 1364 (Fed. Cir. 2001) (holding that "the United States Court of Federal Claims [has] exclusive jurisdiction over patent infringement suits against the [G]overnment"). In addition, since the Amended Complaint alleges that the Government has taken Mr. Gal-Or's trade secrets, without just compensation, the court has jurisdiction to adjudicate those claims. *See Gal-Or III*, 470 Fed. Appx. at 884 ("It is undisputed that trade secrets are protected by the Taking Clause of the Fifth Amendment . . . . In light of this fact, the Court of Federal Claims erred when it determined that the amended complaint did not state Fifth Amendment takings claims[.]" (citing *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1003–04 (1984)); *see also Morris v. United States*, 392

F.3d 1372, 1375 (Fed. Cir. 2004) ("Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000.").

The Government's aforementioned jurisdictional argument, based on 28 U.S.C. § 2502(a) is addressed below.

### B. Standard Of Review For Pro Se Litigants.

The pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers"). It has been the tradition of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 412 F.2d 1285, 1292 (Ct. Cl. 1969). Nevertheless, while the court may excuse ambiguities in a *pro se* plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).

### C. Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797.

### D. Standard Of Review For A Motion To Dismiss Pursuant To RCFC 12(b)(6).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . . is raised by a [Rule] 12(b)(6) motion . . . ." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(6) (allowing a party to assert, by motion, "failure to state a claim upon which relief can be granted"). When considering whether to dismiss an action for failure to state a claim, the court must assess whether the complaint states "allegations plausibly suggesting (not merely consistent with)" behavior by defendant that, if proven, would entitle the plaintiff to judicial relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 550 U.S. at 555 (internal citations omitted). *But see Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions.").

### E. Issues Raised By The Government's Third Motion To Dismiss.

The court construes the August 2, 2010 Amended Complaint to present two claims for adjudication: (1) infringement of the '431 patent, in violation of 28 U.S.C. § 1498(a), for the Government's alleged use of the '431 patent in the 2005 Propulsion–Controlled Aircraft Recovery project; and (2) a taking under the Fifth Amendment of twenty-five trade secrets owned by Mr. Gal-Or by misappropriation by the Government.

#### 1. Whether 28 U.S.C. § 2502(a) Divests The Court Of Subject Matter Jurisdiction To Adjudicate Plaintiffs' Claims.

##### a. The Government's Argument.

The Government argues that, because all three Plaintiffs are citizens of a foreign country, the court's Tucker Act jurisdiction is limited by the Reciprocity Act, 28 U.S.C. § 2502(a),[9] that has been interpreted as authorizing the United States Court of Federal Claims to adjudicate cases only if "the alien's home country accords to citizens of the United States the right to prosecute claims against their government in its courts." Gov't Mot. at 4 (quoting *Ferreiro v. United States*, 350 F.3d 1318, 1320 (Fed. Cir. 2003) (internal citation omitted)).

Specifically, the Reciprocity Act requires that a plaintiff establish reciprocity in law and practice as a jurisdictional prerequisite, *i.e.*, that U.S. citizens are able sue the foreign government of a plaintiff's nation of citizenship on the same terms as that nation's citizens. Gov't Mot. at 4 (citing *El-Shifa Pharm. Indus. Co. v. United States*, 378 F.3d 1346, 1354 (Fed. Cir. 2004) (explaining that "the Reciprocity Act burdens alien plaintiffs who invoke the process of the [United States] Court of Federal Claims with showing that their home courts treat natives and American citizens equally when they adjudicate claims brought against their home countries")). This requires that a foreign plaintiff provide statutes or case law, affidavits from experienced attorneys, or statements from governmental officials, showing that "American citizens have equal standing to sue in the [applicable foreign] court system." Gov't Mot. at 5 (quoting *Mexican Intermodal Equip. v. United States*, 61 Fed. Cl. 55, 61 (2004)).

Because Mr. Gal-Or is an Israeli citizen and Dr. Sherbaum and Dr. Lichtsinder also appear to be "citizens of a foreign nation," they have the burden of demonstrating reciprocity.

---

[9] Section 2502(a) of Title 28 provides that:

Citizens or subjects of any foreign government which accords to citizens of the United States the right to prosecute claims against their government in its courts may sue the United States in the United States Court of Federal Claims if the subject matter of the suit is otherwise within such court's jurisdiction.

28 U.S.C. § 2502(a).

Gov't Mot. at 5. Plaintiffs in this case have provided no affidavits from competent attorneys or government officials and no statutes or official case law demonstrating reciprocity and, therefore, have failed to meet their burden under 28 U.S.C. § 2502(a). Gov't Reply at 3. Therefore, the court does not have jurisdiction to adjudicate the claims alleged in the Amended Complaint, which must be dismissed for lack of subject matter jurisdiction. Gov't Mot. at 4–5.

### b.     The Plaintiffs' Response.

Plaintiffs respond that the evidentiary requirement to establish reciprocity under 28 U.S.C. § 2502 is lenient, and can be satisfied with "only the slightest evidence." Pl. Br. at 16 (quoting Note, *Jurisdiction in the Court of Claims: Foreign Plaintiffs and the Reciprocity Statute*, 1962 DUKE L. J. 145, 150 (1962)). In addition, Plaintiffs provided the court with a list of agreements, treaties, memoranda of understanding between the United States and Israel, and secondary sources concerning foreign judgments in Israel to demonstrate reciprocity. Pl. Br. at 2, 16, App. A–B. One of the treaties cited is the Treaty of Friendship, Commerce, and Navigation. *See* U.S.-Israel, Aug. 23, 1951, 5 U.S.T. 550 ("Treaty of Friendship, Commerce, and Navigation"). Article V of that Treaty provides:

> Nationals and companies of either Party shall be accorded national treatment and most-favored-nation treatment with respect to access to the courts of justice and to administrative tribunals and agencies within the territories of the other Party, in all degrees of jurisdiction, both [i]n pursuit and in defense of their rights. It is understood that companies of either Party not engaged in activities within the territories of the other Party shall enjoy such access therein without any requirement of registration or domestication.

Treaty of Friendship, Commerce, and Navigation, U.S.-Israel, Art. V, Aug. 23, 1951, 5 U.S.T. 550.

### c.     The Court's Resolution.

On March 21, 2013, now Senior Judge Firestone issued an Order "find[ing] that the plaintiffs have satisfied their burden of demonstrating reciprocity under 28 U.S.C. § 2502(a), and reject[ing] the government's motion to dismiss all of the plaintiffs' claims based on the Reciprocity Act." March 21, 2013 Order at 6, *Gal-Or v. United States* (No. 09-869), Dkt. No. 53. Therein, the court determined that under the terms of the Treaty of Friendship, Commerce, and Navigation, "United States citizens are to have free access to the courts of Israel," and concluded that this was sufficient to defeat the Government's jurisdictional challenge under 28 U.S.C. § 2502(a). *Id.* (citing *Zalcmanis v. United States*, 173 F. Supp. 355, 357 (Ct. Cl. 1959) (stating that a treaty permitting "United States citizens free access to Latvian courts" was sufficient to demonstrate reciprocity)). The March 21, 2013 Order is a well-reasoned decision, concluding that the Reciprocity Act should not be interpreted "rigidly in circumstances where there is evidence that United States citizens may prosecute claims in the home courts of a foreign national," and that the Treaty of Friendship, Commerce, and Navigation provides evidence—albeit limited evidence—that American citizens have this access. *See Ferreiro*, 350 F.3d at 1322. The court has determined that this Treaty governs the Government's Third Motion to

Dismiss[10] and that reciprocity has been established as to Mr. Gal-Or, as well as to Dr. Sherbaum and Dr. Lichtsinder, if they are Israeli citizens.[11] *See Zalcmanis*, 173 F. Supp. at 357 (finding reciprocity based on a treaty that afforded "United States citizens free access to Latvian courts"). In addition, the court's independent research indicates that the State of Israel may be sued as a defendant without regard to the nationality of the plaintiff.[12] The Reciprocity Act only requires that: "American citizens enjoy an equal standing with foreigners in actions against the foreign State and does not require that the scope of actions for which the respective countries render themselves liable to suit shall be coextensively identical and in pari material." *Nippon Hodo Co. v. United States*, 152 Ct. Cl. 190, 193 (1961).

For these reasons, the court has determined that, to the extent that all Plaintiffs are citizens of Israel, the requirements of the Reciprocity Act have been met. In addition, insofar as the Government argues for dismissal of Mr. Gal-Or's takings claims based on trade secret misappropriation, that argument is arguably foreclosed by *Russian Volunteer Fleet v. United States*, 282 U.S. 481 (1931). In that case, a foreign corporation filed a suit against the Government in the Court of Claims, to recover just compensation under the remedial provisions of the Act of June 15, 1917.[13] *Id.* at 486. The Court of Claims determined that it did not have jurisdiction to adjudicate plaintiff's claims, because they failed to establish reciprocity. *See Russian Volunteer Fleet v. United States*, 68 Ct. Cl. 32, 36 (1929). On appeal, the United States Supreme Court reversed, explaining that reciprocity was not a "condition precedent" to recovery under the Act of June 15, 1917, because the Fifth Amendment guarantees that "private property shall not be taken for public use without just compensation [and] establishes a standard for our [G]overnment which the Constitution does not make dependent upon the standards of other governments." *Russian Volunteer Fleet*, 282 U.S. at 492. Because the Government exercised "the power of eminent domain in taking the [plaintiff's] property, the United States became bound to pay just compensation." *Id.* at 489 (internal citations omitted). In addition, the United States Supreme Court declined to interpret the statute as conditioning recovery on a demonstration of reciprocity, because doing so, "to say the least, would raise a grave question as to the constitutional validity of the [A]ct." *Id.* at 492.

For these additional reasons, the court has determined that is has jurisdiction to adjudicate the claims alleged in the August 2, 2010 Amended Complaint as to infringement of the '431 patent, in violation of 28 U.S.C. § 1498(a), for the Government's alleged use of the '431 patent

---

[10] *See* Treaties in Force, U.S. Dep't of State, Jan. 1, 2012, http://www.state.gov/documents/organization/202293.pdf (last visited October 21, 2013).

[11] Based on Plaintiffs' submissions to the court, it appears that Dr. Lichtsinder and Dr. Sherbaum are Israeli citizens.

[12] *See* Law of Civil Procedure Amendment (State as a Lawyer), 5719-1958 (1958) (Isr.), *available at* http://www.nevo.co.il/law_html/law01/055_012.htm#_ftn1 (website translated using Google Translate).

[13] The Act of June 15, 1917 authorized the expropriation of ships and other property during war, but required the payment of just compensation.

13

in the 2005 Propulsion–Controlled Aircraft Recovery project. Therefore, the Government's Motion To Dismiss, pursuant to RCFC 12(b)(1), is denied.

### 2. Whether The Disclosure Of Trade Secrets Extinguishes Attendant Property Rights.

#### a. The Government's Argument.

The Government argues that even if Mr. Gal-Or's inventions warranted trade secret protection, he "no longer possess[es] any legally protected rights in [the trade secrets]," because he widely disseminated any protected information over the course of many years. Gov't Mot. at 8. The scope of the property right in a trade secret "is defined by the extent to which the owner of the secret protects his interest from disclosure to others." Gov't Mot. at 9 (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)). In other words, a trade secret loses protection when it is publicly disclosed. Gov't Mot. at 9. Trade secret protection also is vitiated when an owner discloses confidential information to "persons who are under no obligation to safeguard [it]," *i.e.*, when it is revealed without marking the material as "confidential," "trade secret," or when disclosure is made without a signed non-disclosure agreement. Gov't Mot. at 9.

The Government analogizes this case to *Block v. United States*, 66 Fed. Cl. 68, 71 (2005), wherein the court dismissed takings claims based on trade secret misappropriation, because of disclosure to the Government and the failure to protect proprietary information. Gov't Mot. at 9 (citing *Block*, 66 Fed. Cl. at 75 ("Because [plaintiff] disclosed his alleged trade secrets to others, 'who were under no obligation to protect the confidentiality of the information,' at both NASA and the FAA, the plaintiff lost any property interest he may have had." (quoting *Ruckelshaus*, 467 U.S. at 1002))); *see also Sterner v. United States*, 434 F.2d 656, 657 (Ct. Cl. 1970) (holding that protected property rights are lost by publishing them in the public domain); *Grayton v. United States*, 92 Fed. Cl. 327, 334–35 (2010) (Since plaintiff "failed to place a restrictive legend on the proposal he sent to the [Government]" any property interest he had in those ideas was destroyed).

In this case, Mr. Gal-Or acknowledged that he voluntarily disclosed information regarding his inventions to the Government and other third parties on "at least fourteen occasions between 1986-1997." Gov't Mot. at 10 (quoting *Gal-Or I*, 97 Fed. Cl. at 478). Because this information was disclosed, without requiring "a confidentiality or non-disclosure agreement" or designating that this information was "confidential, proprietary, or trade secrets," Mr. Gal-Or voluntarily relinquished the property rights protected by the Taking Clause of the Fifth Amendment. Gov't Mot. at 11–12 (internal quotations omitted).

#### b. The Plaintiffs' Response.

Mr. Gal-Or's response, expressed in over 90 pages of filings and/or submissions, appears to be that he "never published or disclosed the 57 taken weapons-type [trade secrets] to anyone but employees with DOD-Clearance in Classified Contracts." Pl. Resp. at 12. Mr. Gal-Or further explains that twenty-two of these trade secrets "have never been published by anyone." Pl. Resp. at 12. As such, these fifty-seven trade secrets were "confidentially maintained." Pl.

14

Resp. at 2. While acknowledging that he shared his proprietary information with the Government and various government contractors, Mr. Gal-Or contends that all of these entities were involved with "black U.S. Programs" where "employees have [Department of Defense] clearances." Pl. Supp. Br. at 24. In fact, disclosures to government contractors, such as General Electric, were made only within the context of classified or confidential work projects. Pl. Resp. at 1.

Specifically, as to the 1986 Proprietary Information Agreement with Boeing, Mr. Gal-Or states that he subsequently marked at least forty-one trade secrets with the following legends: "LEGAL PROPERTY OF TECHNION-IIT and Gal-Or," "Patent Pending," "TURBO and JET-ENGINE LABORATORY," and "submitted to Boeing Military Airplane Co., Sept.., 1986 in lieu of our Proprietary Information Agreement of Aug. 25, 1986."[14] Pl. Resp. at 8; 12–13. Mr. Gal-Or insists that he "safeguarded the confidentiality of the information" discussed during lectures and kept his trade secrets "strictly confidential" to maintain legal protection. Pl. Resp. at 8. Mr. Gal-Or argues, however, that the only way to conduct his classified work with various government contractors and market his inventions is to share his information in the manner that he did. Pl. Supp. Br. at 24. Thus, Mr. Gal-Or disseminated information pertaining to his trade secrets "via unclassified, non-confidential, academic [and] industrial seminars/re-education of pilots [and] engineers, *sometimes delivered under standard, 'Non Disclosure Agreements*[,]' prior to entering into any classified contract work." Pl. Resp. at 17 (emphasis added).

In addition, Mr. Gal-Or contends that the Air Force, in particular, "knowingly and intentionally" published information about eight of his trade secrets. Pl. Resp. at 16. Mr. Gal-Or also is of the opinion that the United States Navy, the United States Department of Defense, and the Department of Homeland Security, among others, "unintentional[ly]" published information pertaining to twenty-seven of his trade secrets in 1986. Pl. Resp. at 16.

In sum: Mr. Gal-Or disclosed information pertaining to his trade secrets only to persons, whether employed by the Government or government contractors, who had high-level security clearances; and, it was these individuals who were responsible for disclosing his trade secrets. On some occasions, however, Mr. Gal-Or marked his trade secrets with restrictive legends, although disclosures to third parties occurred in the context of his attempt to market his inventions or while performing work on classified projects. In addition, Mr. Gal-Or gave lectures discussing his trade secrets where he occasionally, but not always, utilized non-disclosure agreements.

---

[14] Mr. Gal-Or states that the President of Boeing invited "professor Gal-Or to the U.S. to disclose to [Boeing] his stealth design and flight testing trade secrets. On 8/25/1986, that was done via classified contract. Boeing immediately adopted that taken property . . . . [and] [t]his violated contract [and the Fifth Amendment]." Pl. Supp. Br. at 1. Consequently, Boeing committed an "undisputed, 1986 taking[] of weapon-type, Israel-State-Classified, trade secrets and inventions and present[ed] them to the [United States Government] as its own." Pl. Br. 8.

15

c.  **The Court's Resolution.**

As a matter of law, trade secrets are protected by the Taking Clause of the Fifth Amendment. *See Ruckelshaus*, 467 U.S. at 1003–04 ("[T]o the extent that [Plaintiff] has an interest in its . . . data cognizable as a trade-secret property right under [state] law, that property right is protected by the Taking Clause of the Fifth Amendment."). But, as the United States Supreme Court has observed, "property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980) (internal citations omitted). Therefore, in light of the intangible nature of trade secrets, "the extent of the property right therein *is defined by* the extent to which the owner of the trade secrets protects his interest from disclosure to others." *Block*, 66 Fed. Cl. at 75 (quoting *Ruckelshaus*, 467 U.S. at 1002) (emphasis added). As such, broad-based public disclosure, such as when a person places their "ideas in the public domain by publishing them," eliminates trade secret protection. *See Sterner*, 434 F.2d at 657 (internal citation omitted).

Therefore, when trade secret information is submitted to the Government or other third parties, it is incumbent on the owner to "protect the information from disclosure to others . . . . [by] mark[ing] [their] proposal 'confidential' or 'trade secret.'" *Block*, 66 Fed. Cl. at 75. The purpose of that marking is to impose on the Government "an obligation to protect the confidentiality of the information." *Id.* A non-disclosure agreement also suffices to protect the confidentiality of trade secrets. *Id.* But, disclosing trade secrets without taking the minimal steps necessary to maintain trade secret protection is "fatal to [a] taking claim." *Id.*

For purposes of resolving the issue of whether the disclosure of Mr. Gal-Or's trade secrets extinguished his property rights, the court assumes that Mr. Gal-Or in fact owned legally cognizable trade secrets.[15] Nevertheless, Mr. Gal-Or's repeated public disclosures throughout the 1980's and 1990's, albeit with sporadic efforts to ameliorate such disclosure, as a matter of

---

[15] Federal law defines a trade secret as:

[A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if--

(A) the owner thereof has taken reasonable measures to keep such information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public[.]

18 U.S.C. § 1839(3).

law relinquished their protected status. *See Ruckelshaus*, 467 U.S. at 1002; *Block*, 66 Fed. Cl. at 75; *Sterner*, 434 F.2d at 657.

The Amended Complaint describes numerous occasions wherein Mr. Gal-Or disclosed trade secrets or other proprietary information without imposing an obligation to maintain confidentiality, *e.g.*, "[s]aid disclosures involved documents, video tapes [and] reports conferred in conference, office, or lecturing rooms, or at [Mr. Gal-Or's] laboratory or during [Mr. Gal-Or's] flight tests." Am. Compl. at 15.[16] Other instances in which Mr. Gal-Or took proactive steps to protect the confidentiality of his trade secrets are *simply overwhelmed* by the number of times he did not. More fundamentally, because Mr. Gal-Or's submissions make it impossible to identify the trade secrets that were protected from those that were not, the August 2, 2010 Amended Complaint is so vague that it fails to meet the pleading requirements of RCFC 8. *See* RCFC 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief").

The series of events described in the August 2, 2010 Amended Complaint undeniably "placed [Mr. Gal-Or's] ideas in the public domain." *Sterner*, 434 F.2d at 657. Even if Mr. Gal-Or disclosed his trade secrets to persons with classified security clearances, their obligation as to secrecy was to the Government, not Mr. Gal-Or, and the additional "failure to place any restrictive markings on his [trade secrets] before submitting [them] to [Government] personnel," or "identify any proprietary information [as trade secrets] . . . [meant that] the [G]overnment was not under any obligation to protect the confidentiality of the information." *Block*, 66 Fed. Cl. at 75; *see also, e.g., Grayton*, 92 Fed. Cl. at 335 ("[P]recedent holds that a federal agency is under no obligation to keep unsolicited proposals confidential, when restrictive legends that could identify the proprietary information therein are inadequate or missing." (citing *Xerxe Group, Inc. v. United States*, 278 F.3d 1357, 1360 (Fed. Cir. 2002) (determining that plaintiff's "failure to identify and clearly demarcate what it considered restricted data is fatal to its claim"))).

In sum, because Mr. Gal-Or disclosed trade secrets to others, "'who were under no obligation to protect the confidentiality of the information' . . . [Mr. Gal-Or] lost any property interest he may have held. If there is no property interest there can be no taking." *Block*, 66 Fed. Cl. at 75 (quoting *Ruckelshaus*, 467 U.S. at 1002 (internal citation omitted)).[17] Moreover, the court has no jurisdiction over any trade secret allegedly misappropriated by Boeing and, to the extent that Mr. Gal-Or alleges that the Government induced trade secret misappropriation or benefitted therefrom, any such claims expired in 1992. *See* 28 U.S.C. § 2501.

---

[16] To the extent that these disclosures were made to individuals who possessed security clearances, that does not alter the fact that "[o]nce the data that constitute a trade secret are disclosed to others, or others are allowed to use those data, the holder of the trade secret has lost his property interest in the data." *Ruckelshaus*, 467 U.S. at 1011.

[17] The Government also argues that Drs. Sherbaum and Lichtsinder "are probably" necessary parties to Mr. Gal-Or's trade secrets claim, such that their participation is required for purposes of standing. Gov't Mot. at 6. In addition, the Government argues that almost all of Mr. Gal-Or's trade secrets claims are timebarred by 28 U.S.C. § 2501. Gov't Mot. at 7. Because of the court's disposition of Mr. Gal-Or's trade secrets claims, it is unnecessary for the court to consider these additional arguments.

IV. **CONCLUSION.**

For these reasons, the Government's August 15, 2012 Motion To Dismiss is denied, insofar as it requests dismissal, pursuant to RCFC 12(b)(1), for a failure to satisfy the reciprocity requirement of 28 U.S.C. § 2502(a). But, the Government's August 15, 2012 Motion To Dismiss as to the trade secrets claims alleged in the August 2, 2010 Amended Complaint is granted, pursuant to RCFC 12(b)(6).

Mr. Gal-Or's claim for infringement, under 28 U.S.C. § 1498(a), of the '431 patent by virtue of the Government's 2005 alleged use in the Propulsion–Controlled Aircraft Recovery project, is not dismissed. The court will convene a status conference with the parties to discuss further action in this proceeding.

**IT IS SO ORDERED.**

s/ Susan G. Braden
**SUSAN G. BRADEN**
**Judge**